IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff/Respondent | ) | |
| | ) | |
| v. | ) | Case No. 03-20051-JWL |
| | ) | 08-2089-JWL |
| KENNETH WATERBURY, | ) | |
| | ) | |
| Defendant/Movant | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

In May 2004, a jury convicted Defendant Kenneth Waterbury of conspiracy to distribute more than 500 grams of methamphetamine, possession with intent to distribute five or more grams of methamphetamine, and being a felon in possession of a firearm. A sentencing hearing was held on February 25, 2005, and the court imposed a sentence of 325 months for the counts of conspiracy to distribute methamphetamine and possession with intent to distribute. For the felon in possession of a firearm conviction, the court imposed a 120 month sentence to be served concurrently with the first sentence to be followed by five years of supervised release. Judgment was entered on the docket on March 1, 2005, (Doc. 325) and the defendant timely filed a notice of appeal on March 1, 2005 (Doc. 328).

In his appeal, the defendant raised whether the district court properly denied the suppression of evidence seized from the defendant, and whether the evidence was

sufficient, when taken in the light most favorable to the government, to find defendant guilty beyond a reasonable doubt.  The Tenth Circuit Court of Appeals upheld the defendant's conviction and sentence on appeal.  *United States v. Waterbury*, 206 Fed. App'x 805, 811 (10th Cir. Nov. 29, 2006).  That court's mandate was filed on December 28, 2006 (Doc. 463).  The defendant did not file a petition for rehearing, nor did he petition the United States Supreme Court for a writ of certiorari.

On February 25, 2008, Mr. Waterbury filed a Motion to Vacate under 28 U.S.C. § 2255 (Doc. 490), which is presently before the court.  He alleges ineffective assistance of counsel and presents three grounds for relief: 1) he claims his counsel was ineffective for failing to seek severance in his case; 2) he claims his trial counsel was ineffective for failing to object to his wearing prison clothes on the first day of trial; and 3) he claims that trial counsel failed to further investigate and call an alibi witness who could testify he did not own the firearm which was the subject of his possession conviction.  For the reasons set forth below, Mr. Waterbury's Motion to Vacate under 28 U.S.C. § 2255 (Doc. 490) is denied.

## FACTUAL BACKGROUND

This court adopts the facts of this case related to Mr. Waterbury from his direct appeal.

> On April 11, 2004, Kansas City police executed a search warrant on an apartment located at 1124 Hilltop in west Kansas City, Kansas.  The apartment was rented to Carl Rieger, a friend of Carlos Portillo-Quezada, and police suspected it as a "storefront" for methamphetamine distribution.  Police believed Portillo-

2

Quezada to be the ring-leader of a large scale methamphetamine distribution ring, and were also investigating him in connection with the recent murder of Bruce Andrews, whose body had been discovered several days before the search.

Police executed the search warrant at 5:45 a.m. Even though authorized to conduct a no-knock raid, police officers identified themselves before forcibly entering the apartment. Officer Christopher McAlister was first into the apartment, [sic] he was followed by Officer Chris Johnson. Almost immediately upon entry, McAlister encountered three people in a front living room, including Waterbury and two women. To secure the room, McAlister ordered all three to lie face-down on the floor. Prior to ordering Waterbury and his companions to lie down, McAlister observed the floor to be clear of objects. After the suspects were on the floor, McAlister observed Waterbury's right hand next to his right leg, and noticed him engaging in furtive movements. After repeatedly ordering Waterbury to bring his hand away from his leg and place it on the floor above his head, McAlister noticed a .380 caliber handgun next to Waterbury's right leg. McAlister placed Waterbury under arrest for illegally possessing a concealed weapon.

Waterbury was searched incident to his arrest by Johnson. Johnson found three packages of methamphetamine and $452 in currency on Waterbury. Of the currency seized, $30 was in marked government bills which had been used in a drug transaction between Portillo-Quezada and an undercover Kansas City police officer six hours earlier.

After his arrest, Waterbury was placed in the back seat of Officer Gary Wansley's patrol car. Wansley testified that Waterbury was the only passenger he transported that morning and that he placed Waterbury in the patrol car just after completing an interior and exterior check of the vehicle. Wansley later discovered seven rounds of .380 caliber ammunition in the crevice of the seat where Waterbury had been seated. Wansley further testified that no one other than himself and Waterbury had access to the rear seat of his patrol car from the time he inspected it until his discovery of the bullets.

Prior to trial, Waterbury moved to suppress the gun, methamphetamine and currency. The district court denied the motion, finding that McAlister had probable cause to arrest Waterbury for carrying a concealed weapon, and that the search was valid incident to arrest.

Waterbury was tried alongside two co-defendants: Portillo-Quezada and Noe Espino. At trial, the government presented testimony by several witnesses, including Rieger, whom prosecutors contended was Portillo-Quezada's right-hand-man in the distribution ring. Rieger testified that he would often deliver methamphetamine for Portillo-Quezada, and that Waterbury would sometimes deliver the drugs when Rieger was unavailable. Rieger claimed that Waterbury

3

was present for many drug transactions at the 1124 Hilltop apartment and helped customers of Portillo-Quezada "sample" methamphetamine by smoking it with them and possibly by "loading up" pipes for them. Finally, Rieger testified that he had seen Waterbury "showing off" a .380 caliber handgun just before the police raid. The gun, three packets of methamphetamine, and the marked currency were all introduced against Waterbury at trial.

. . . .

At trial, the government presented extensive evidence that Waterbury knowingly and voluntarily participated in the conspiracy. Patrick Loffredo, a frequent purchaser of drugs from the ring, testified that he saw Waterbury at the apartment while buying drugs and had seen Waterbury help customers sample methamphetamine for sale by packing their pipes and smoking with them. Rieger was an active participant in the conspiracy. He testified that Waterbury would deliver methamphetamine when Rieger was unavailable. In addition, according to Rieger, members of the drug conspiracy used Waterbury's residence for methamphetamine sales with Waterbury's consent. Finally, a jailhouse letter written by Waterbury and sent to a friend disclosed that he lost over $9000 the night of the raid, and supported an inference he was active in what he described as "the game," namely the drug conspiracy.

. . . .

The government presented evidence of actual possession through Rieger's testimony that the seized .380 caliber handgun closely resembled a firearm Waterbury was "showing off" at the apartment before the police raid. Further, McAlister's testimony that the gun was found near Waterbury's side after he moved his right hand supports the inference that Waterbury discarded the weapon when he believed he would be searched and could no longer conceal it. These facts, when combined with the seven .380 caliber bullets found in the back seat of the patrol car transporting Waterbury, amply support the inference that Waterbury possessed and directly controlled a .380 caliber handgun at the 1124 Hilltop apartment.

*United States v. Waterbury*, 206 Fed. App'x 805, 807-11 (10th Cir. Nov. 29, 2006) (internal citations omitted).

## LEGAL STANDARD

Chapter 28, United States Code, section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there

4

has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.  The court must hold an evidentiary hearing on a section 2255 motion "'[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting § 2255).  A court need not grant an evidentiary hearing where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.  *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also United States v. Sanchez*, 105 F.3d 670, 1997 WL 8842, *3 (10th Cir. 1997) (table opinion) ("[D]efendant's conclusory allegations . . . which contradict the record made at the plea hearing, were insufficient to require an evidentiary hearing.").

There is a procedural bar against a defendant raising any claim in a section 2255 motion that he did not raise in his direct appeal "unless he can demonstrate cause for his procedural default and prejudice suffered thereby, or that the failure to hear his claim would result in a fundamental miscarriage of justice." *United States v. Wright*, 43 F.3d 491, 496 (10th Cir. 1994).  *See also United States v. Frady*, 456 U.S. 152, 165 (1982).  Without a showing of cause and prejudice, a federal habeas petitioner procedurally defaults all claims which are not raised in his direct appeal, other than claims asserting the petitioner was deprived of the effective assistance of counsel. *See id.* at 167-68.

5

## ANALYSIS

**Standard for Demonstrating Ineffective Assistance of Counsel**

All of Mr. Waterbury's claims for section 2255 relief are based on what he alleges was ineffective assistance of counsel.   Therefore, even though Mr. Waterbury did not raise the issues claimed in his section 2255 petition in his direct appeal, he is not procedurally barred because each of his claims are based on ineffective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.   Under the *Strickland* test, a petitioner must first demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688.  As the one raising the challenge, it is Mr. Waterbury who "bears the burden of establishing that his trial counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Sallahdin v. Mullin*, 380 F.3d 1242, 1247-48 (10th Cir.2004) (quoting *Strickland*, 466 U.S. at 687).

If the first prong is satisfied, the Court then examines the second prong, which requires the defendant to "show that counsel's deficient performance prejudiced the defense...." *Le v. Mullin*, 311 F.3d 1002, 1024-25 (10th Cir.2002).  To succeed, Mr. Waterbury must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1025 (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability

6

sufficient to undermine confidence in the outcome." *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir.2002).   The Court "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir.1998). Conclusory allegations, without factual basis, are insufficient to support claims of ineffective assistance of counsel.   *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir.1994).

*Ground 1 - Failure to File Motion to Sever*

Mr. Waterbury argues that his counsel was ineffective when he failed to file a motion for severance on his behalf.  The court disagrees.  "Defendants jointly charged are not entitled to separate trials as a matter of right. . . . The general rule is that persons who are indicted together should be tried together."  *United States v. Green*, 115 F.3d 1479, 1487 (10th Cir. 1997) (also noting that severance was not warranted just because a defendant was charged in only two of nine counts); *see also United States v. Ramos*, 839 F. Supp. 781, 784 (D. Kan. 1993) ("[C]ourts generally adhere to the principle that those indicted together, *especially co-conspirators*, should be tried together.") (emphasis added) (quotations and citations omitted).  Mr. Waterbury was tried with co-conspirators with whom he was indicted.  He made no showing as to why this general rule would have been overcome if his counsel would have filed a severance motion.  He, therefore, has made no showing that his counsel acted unreasonably by not filing that motion.

Mr. Waterbury also has not shown that there was a strong showing of prejudice such that if a motion to sever would have been filed, it would have been granted. *See United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989) ("It is not enough for [a defendant] to show that severance would have increased his chances for acquittal. He must make a strong showing of prejudice. . . . [T]he conflict between co-defendants must be so intense that there is a danger the jury will unjustifiably infer from the conflict alone that both defendants are guilty." (Citations and quotations omitted.)). Mr. Waterbury has failed to show he was prejudiced under the second prong of *Strickland*. A court should only grant severance if there is enough prejudice to prevent a jury from making a reliable determination on guilt or innocence. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Mr. Waterbury's contention that the district court probably would have severed the case is a mere conclusory statement. District courts are given wide latitude regarding severance issues. As pointed out in *Zafiro*, "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538-39. Mr. Waterbury argues that there were "many specific pieces of evidence that can be pointed to that were admitted at the joint trial that should not have been considered against Mr. Waterbury and would not have been admitted if he was tried alone." (Memorandum in Support of 28 U.S.C. § 2255 Petition, Doc. # 506). However, in Mr. Waterbury's case, the district court instructed

8

the jury:

> A separate crime is charged against one or more of the defendants in each count
> of the Superceding indictment.  Each count, and the evidence pertaining to it,
> should be considered separately.  Also, the case of each defendant should be
> considered separately and individually.  The fact that you may find one or more
> of the accused guilty of any other of the crimes charged should not control your
> verdict as to any other crime or any other defendant.  You must give separate
> consideration to the evidence as to each defendant.

Doc. # 208, Inst. 9.

Mr. Waterbury broadly claims that the jury was incapable of distinguishing between the
testimony against him and against his co-conspirators.  However, the court instructed the
jury on how to consider the evidence separately, and Mr. Waterbury does not claim that
the jury considered any specific evidence that did not bear on his guilt.  Mr. Waterbury,
therefore, also has not shown that he was prejudiced by counsel's failure to file a motion
to sever.

*Ground 2 - Failure to Provide Civilian Attire*

Because of potential prejudice, the government may not compel a defendant to
stand trial in prison clothes.  *Estelle v. Williams*, 425 U.S. 501, 512 (1976).  Although
the government "cannot compel an accused to stand trial before a jury while dressed in
identifiable prison clothes, the failure to make an objection to the court as to being tried

in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Id.* at 512.  In fact, "it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Id.* at 507-08; *see also Hill v. Mitchell*, 400 F.3d 308, 321 (6th Cir. 2004) (finding no ineffective assistance of counsel where attorney did not object because the defendant did not object at trial to wearing prison attire)*, Josey v. Roe*, 16 Fed. App'x 676, 677 (9th Cir. Aug. 1, 2001) (finding no ineffective assistance of counsel where attorney did not object because the defendant did not object and the state did not compel the defendant to wear prison attire), *Smith v. Black*, 904 F.2d 950, 979 (5th Cir. 1990) (finding not objecting to the defendant's wearing prison attire was "well within the strong presumption of sound trial strategy required by *Strickland*"), *United States v. Joshi*, 896 F.2d 1303, 1308 (11th Cir. 1990) (finding no ineffective assistance of counsel where attorney did not object because there was no violation of an "inherently personal right of fundamental importance," and characterizing the wearing of prison attire as a tactical one).

Here, Mr. Waterbury was not in prison clothes due to the compulsion of the government or his attorney; rather, the defendant's fiancee overslept and did not bring his civilian clothing at the start of trial.  (Vol. V, at 3-4.)  As Mr. Donham, Mr. Waterbury's attorney, explained to the court:

Judge, on behalf of Mr. Waterbury, his fiancee, Ms. Rush, was supposed to arrive

10

early this morning with a set of clothes.  I attempted to contact her.  There was no

answer on her cell phone.  Ms. Scheurer has contacted her, woke Ms. Rush up,

so it doesn't appear that she's going to be here on time with clothing.

The court then asked if Mr. Donham if he was prepared to proceed and Mr. Donham

agreed that he was.  Mr. Waterbury does not claim in his section 2255 motion that he

asked his attorney to object prior to starting voir dire in prison clothing, and there is no

evidence in the record that he objected to proceeding to trial in prison clothing.  As

discussed above, the failure to object to trial proceedings conducted in prison attire is

enough "to negate the presence of compulsion necessary to establish a constitutional

violation."  *Estelle v. Williams*, 425 U.S. 501, 512 (1976).  In addition, during voir dire

the court asked the jury pool if the defendant's prison attire would prejudice them, and

all the potential jurors indicated that they would be impartial.  (Vol. V, at 9).  Mr.

Waterbury fails to establish the prejudice required by the second prong of *Strickland*,[1]

---

[1]Mr. Waterbury argues that the inherent prejudice of his presence in prison attire
before the jury was enhanced by a comment made by the prosecution during voir dire.
However, the court is unpersuaded that this isolated comment rendered the trial unfair
and constituted ineffective assistance of counsel.  During voir dire, the prosecutor made
the following comment to the jury pool:

> Finally many of us have in our minds what the picture of a criminal is.  They have
> big tattoos and guns and etc., and we expect them to have long hair, and they
> wear biker jackets and that kind of thing.  Is anybody sitting there going, if
> someone doesn't look–

(Vol. V, at 107).
Before the prosecutor could continue, a co-defendant's counsel objected, arguing that
the comment profiled his client as a drug dealer.  (Vol. V, 107-08).  Mr. Waterbury's
counsel joined the objection and moved for a mistrial.  (Vol. V, at 108).  The court
(continued...)

11

and therefore, his claim of ineffective assistance of counsel due to his appearance in prison garb is unpersuasive.

*Ground 3 - Failure to Investigate Gun Charge Against Mr. Waterbury*

Finally, Mr. Waterbury claims that his counsel was ineffective because he failed to a call a witness who could potentially corroborate that the gun Mr. Waterbury was charged with possessing did not belong to Mr. Waterbury, but rather a different co-conspirator. Mr. Waterbury argues in his 2255 motion that further investigation of this potential witness would have led to the witness's testimony that Mr. Waterbury did not own the gun at issue. However, merely showing that Mr. Waterbury did not actually own the gun is not sufficient to show that the defendant did not possess the gun at the time of his arrest. To prove a violation of 18 U.S.C. § 822(g)(1)–that a felon illegally possessed a firearm–the government merely must show actual, knowing possession of a firearm, or constructive possession of a firearm. *United States v. Lauder*, 409 F.3d 1254, 1259 (10th Cir. 2005). Possession does not require ownership; rather possession

---

[1](...continued)
denied the motion and instructed the prosecutor to make a curative statement. The court then followed up the prosecutor's curative statement with its own comments on setting aside preconceived notions about appearance and deciding the case solely on the evidence. In a co-conspirator's appeal, the Tenth Circuit ruled on this issue, and while finding the comments by the prosecutor improper, the court ruled that the comments did not unconstitutionally prejudice the defendants' right to a fair trial. "The court's actions 'closely followed the prosecutor's improper statements and sufficiently disabused the jury of any misimpression created by the prosecutor's inartful [statements].'" *United States v. Portillo-Quezada*, 469 F.3d 1345, 1353 (10th Cir. 2006) (quoting *United States v. Harlow*, 444 F.3d 1255, 1266 (10th Cir. 2006).

12

requires physical control or the ability to control.  *United States v. Al-Rekabi*, 454 F.3d 1113, 1119-20 (10th Cir. 2006).  As the Tenth Circuit discussed in his direct appeal, the government presented sufficient evidence to support a jury's guilty verdict for felony possession at Mr. Waterbury's trial on a theory of actual possession.  *United States v. Waterbury*, 206 Fed App'x at 811.

Mr. Waterbury's third ground does not meet the first or second prong of *Strickland*.  A defendant may disagree with the method and strategy of his trial counsel; however, mere differences of opinion on strategy are insufficient to overcome "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  Mr. Waterbury's attorney chose to press the fingerprint analysis evidence to show that Mr. Waterbury had never touched the gun rather than emphasizing the possibility of disputed ownership.  Such a decision is within the range of professional assistance provided by a defendant's attorney.  Therefore, the first prong of *Strickland* has not been met.  In addition, Mr. Waterbury fails to show prejudice under the second prong.  In this case, the potential testimony as to the disputed ownership of the gun would have been minimally probative in light of the extensive evidence presented at trial as to the defendant's actual and constructive possession of the handgun.  One cooperating  witness, Mr. Rieger, testified that the seized .380 handgun resembled a handgun the defendant had been "showing off" at the apartment prior to the police raid. (Supp. Vol. IV, at 64-66).  One of the arresting

officers, Officer McAlister, testified that the gun was found near the defendant's side after he moved his right hand. (Supp. Vol. II, at 291).  As the Tenth Circuit pointed out in Mr. Waterbury's direct appeal, this testimony, taken with the seven .380 caliber bullets found in the back seat of the police car transporting Mr. Waterbury, (Supp. Vol. II, at 333), supports the inference that the defendant possessed and directly controlled a .380 handgun when arrested.  *Waterbury*, 206 Fed. App'x at 811. Therefore, the defendant has failed to show inadequate assistance of counsel regarding the disputed ownership of the handgun, and this argument provides no basis for relief under section 2255.

IT IS THEREFORE ORDERED BY THE COURT THAT Mr. Waterbury's Motion to Vacate under 28 U.S.C. § 2255 (doc. 490) is **DENIED**.

IT IS SO ORDERED.

Dated this 26th day of September, 2008, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

14